We're going to move to our last case for the day, which is the Glynn Environmental Coalition v. Sea Island Acquisition. Okay, Mr. Bernini. Good morning, Your Honors. Morning. You sound a little distant, so you might want to turn it up or get closer to the mic one. Okay. Your Honor, is that better? A little. Can you help with the volume? That's good. That's better. Okay, good morning, Your Honor. May it please the Court? Your Honor, the issue before you today is whether the plaintiffs have standing to sue under the Clean Water Act Citizen Supervision. I view this case as a fairly simple case. I'll tell you, I'm very sympathetic to your argument in one respect that I think makes this case easy. There are a lot of arguments you make here, not all of which I find persuasive, but all you really need to do is make one. And you've got a client. The Supreme Court has told us that an aesthetic injury is an injury for standing purposes, so long as the individual uses the affected area and is a person for whom the aesthetic value of the area will be lessened by the challenged activity. That's Friends of the Earth, Supreme Court. An individual can meet that burden by establishing that the injury at the pleading stage by attesting that she uses an area affected by the alleged violations and that her aesthetic interest in the area have been harmed. That's what we've said in Black Warrior Riverkeeper. And you've got a client, Ms. Fraser, who said, look, I use this area. I've seen this particular site where there's been a fill. I derived aesthetic pleasure from it before, whether she actually stepped on it or not, I don't see is the point. And it's been harmed by the fill, and it's not as aesthetically pleasing anymore. And this is where I live. It's one of the reasons I live in this area. And it seems to me that's enough. Your Honor, we think that our first and best argument is the aesthetic injury sworn to by Jane Fraser in her affidavit. And we think it's very simple. The Supreme Court case you mentioned, Friends of the Earth versus Laidlaw, the Black Warrior case that you also referenced, and Gaston Copper, which was cited favorably by the 11th Circuit. What we have is a plaintiff, just as you stated, who testified in her affidavit that she regularly recreates in and enjoys the aesthetics of the wetlands and marshes, including the subject wetland that was filled. She also states that she drives by this particular location on a daily basis, and she enjoyed viewing that particular habitat. And that particular habitat is now gone based on a Clean Water Act violation by the defendants. We have always thought that that was the simplest and most direct route. And it doesn't really matter if she previously did not derive pleasure from it, so long as she can't derive pleasure from it in the future. But she actually alleged that she had derived pleasure from it before. That's correct. Your Honor, she's lived in the area for 25 years. She's visited the area for 25 years before that. She's purchased property based on these aesthetic interests. She's alleged that, you know, that's, as an 82-year-old person, her recreation includes enjoying the aesthetic beauty of the area. And so, as you mentioned, we think that's, that alone is sufficient to establish standing. Also, we think that her interest in Dunbar Creek and viewing the aesthetic qualities and values of Dunbar Creek is also sufficient to establish standing. She's stated that she viewed this particular area that had been filled and had derived pleasure from viewing it in its natural habitat. That's correct. And more to Chief Judge Pryor's point, there's a little additional tidbit in the complaint, which is that she actually owns property and lives relatively nearby at the intersection of the park. So, it's not as if she is a person, at least from the pleadings, who is, you know, once every two or three years as a recreational tourist or something. She's an inhabitant of the area. Yes, sir. Your Honor, we think that she's established an environmental interest that's been invaded in three different ways. The subject wetland, as Judge Pryor mentioned, Dunbar Creek, which she regularly drives over and has testified to recreating in. And also, as you mentioned, she and the Glenn Environmental Coalition own a property interest in Twitty Park, which is less than a third of a mile from the subject wetland. Our expert has testified that the activities of filling the subject wetland have resulted in decreased habitat and wildlife in Twitty Park, a property which plaintiffs own an interest. And they used to observe aesthetic qualities that aren't there now, that have been diminished. So, we think that those are three very clear routes to Article 3 standing. And I think it's important to note that... And if she has it, then the associational standing inquiry totally changes. So, all we have to address is her individual standing vacated and remanded. That's correct, Your Honor. We didn't spend a lot of time on associational standing. We either qualify through... And it changes the analysis for everything, right? Agreed. We agree. We also think there's been a procedural injury here, which we have stated to in our... We don't have to get to that though, do we? No, I don't think you do. And it's a particularly thorny issue. And you might not win on it if we address it. Well, then we should stay focused on keeping the main thing Yes, sir. So, I think it's also important to conclude or at least evaluate. The district court, we think, got a little bit off track and required or sought additional factual information, additional evidence, and more specific allegations. And I think it's important to consider that this to dismiss. This is not a summary judgment situation. In every case cited by the district court... And we're just at the pleading stage, right? Yeah. Every case cited by the defendants and the district court in their pleadings or, excuse me, in the opinion and in their brief was those cases were evaluated on a summary judgment standard. And again, we're here before you on a motion to dismiss. We think that's critical. We think that the facts need to be You do have an affidavit. We do. We do. And we think that... That sort of just makes, at this stage, again, because nobody moved for summary judgment, it just makes a portion of your complaint akin to a verified complaint. At this stage, that's all it really does because nobody tested the veracity of your allegations through a summary judgment motion. That's for later in the proceedings. That's correct, Judge Jordan. And I think this circuit has made clear in previous cases, some of them talking about procedural injuries, such as Maransky, that when there's a motion to dismiss standard at play, general factual allegations should suffice and more specific allegations get to be brought out through the evidentiary process later. Courts must presume that the general allegations in the complaint encompass the specific facts necessary to support those allegations. We think the district court required more than it should have required. And that's what the discovery process is going to bring forth. We may be back before this court fighting against a motion to dismiss it got granted, but that's for a later date. I'm sorry. I was just correcting him. I think he meant motion for summary judgment. We might be back. Yeah, motion for summary judgment. I actually think the complaint incorporating the affidavit allowed you to put a lot more detail in there that I think might even include some recreational harm. You've explained a good bit about the degrading of the water quality, the harm to wildlife in a way that's not hypothetical, but that's actual and imminent. I agree. I think we have demonstrated actual harm through our expert affidavit and the testimony or the sworn affidavit of Mr. Fraser. She has stated that she recreates in and around the Dunbar Creek area and that she has, in her own eyes, experienced a diminution in water quality and experienced a decreased amount of wildlife and habitat. And I think the district court got a little sidetracked. In the Black Warrior case, it was made clear that a plaintiff need not show that their injury can be traced to specific molecules of pollution emitted by the alleged polluter. It is enough that plaintiffs show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries in the specific geographic area of concern. Those facts are testified to by Mr. Schweisberg in paragraphs six and seven of his affidavit, that these are the kinds of effects that can be anticipated from the activity that occurred by filling the subject wetland. He really goes further. He says how bad it will be is what's unknown depending on the but it will be either I think he says acute or chronic but it will be one or the other. Yeah well that to your point your honor that that reflects you know an actual harm that has already occurred and an imminent harm that is likely to occur in the future based on the kind of activity that was that was undertaken. So long as it rains. I think we can anticipate that. Um my time is running short. I'll I'll pause here and allow uh yeah you take four minutes for rebuttal um Mr. Darn. Yes your honor may it please the court uh let let me initially state I've heard what has been said and want to address it uh the supreme court in the cases has cleared that you have to show an injury in fact that is concrete and particularized and actual or imminent not conjectural or hypothetical and uh in when we talk about concrete and particularize it has to be to the individual and that an actual harm has been suffered. All right well you've got Ms. Frasier's affidavit that Ms. Frasier's affidavit as you read the various paragraphs and go through the various paragraphs talks about not that she has visited this if we're talking about the subject wetland first of all that she has visited the subject wetland she talks about the fact that it is no longer there uh and it is aesthetic and such property she says in paragraph seven on page two that before the fill that she had derived aesthetic pleasure from this wetland which she described as a natural pleasing natural resources and from other similar wetland habitat habitats in this county by viewing the area in its natural habitat and that that wetland the one that's the subject of this litigation has been replaced by unnatural grassed areas that are less aesthetically pleasing which means that she's seen it before and after how is that not concrete individual particularized Mr. Durham? Well your honor the the fact that she states that she has seen it uh is concrete uh she's not she has not addressed uh any nothing's been addressed about it being uh uh conjectural actual or imminent I mean but how does Mr. Durham in in an aesthetic injury context how do you allege not prove how do you allege more in a pleading when you're dealing with aesthetic harm because aesthetic harm is already already sort of difficult to wrap your head around but as Chief Judge Pryor said the Supreme Court has said that aesthetic injury as long as you have the right allegations can suffice for article three so what else does a person like Ms. Frazier need to allege to have aesthetic injury at the pleading stage? Understanding what your honor is saying that basically means that anytime a subject wetland is removed that all it's always going to be sufficient standing in order to bring such a lawsuit. No no because you have to you have to be someone who either has or is going to deprive aesthetic pleasure from it she says she lives nearby she derived pleasure before because she drove by it observed it she says she moved to the area because of its environmental offerings she says that now according to the alleged uh violation of the Clean Water Act that the wetland has diminished it has hurt the wildlife and habitat etc I'm not sure that that's speculative and conjectural. She says it's less aesthetically pleasing which which from which I would infer reasonably I think that she has seen it again after after the fill and she she has seen that it is less pleasing what what more do you need? I understand uh the court's position on that uh obviously there were other aspects they talked about as far as Dunbar Creek and driving past and water clarity but at no point does it say that uh say how that in any way had damaged her she did not say talk about aesthetically pleasing. She said she observes Dunbar Creek on a daily basis this is paragraph eight as she drives over it and that she's noticed a significant difference in water clarity and Dunbar Creek right? Yes the title creek yes it also says that the water quality has been been confirmed to be diminished because of the fill according to people who are monitoring the creek your honor I'm not sure that the complaint the paragraph in the complaint that talks about it being diminished says directly traces it back to the subject wetland it says it's contributing it said it happened afterwards the after the subject wetland was taken that's when they notice it uh as I recall what was said in that paragraph I think that was in paragraph 48 says the filling of the wetland is a contributing factor to the okay that the reference by GHG states Dunbar Creek's water quality is diminished but I understand what you're stating uh obviously we uh there is a motion to dismiss pending on all the substantive claims that exist in the case uh there's the motion to dismiss uh also exists as to the uh fact that we contend that she does not have uh and that the plaintiffs do not have a cause of action under the clean water act which was the district court should can settle out those questions I mean what we have here is a jurisdictional dismissal that if in error we ought to vacate and remand so the district court can take the first crack at those issues right understand your honor uh and that would still be it would not go as to constitutional standing but clearly as to whether uh there is a provision in the statute that does in fact allow her I have no idea about the merits of all of that but but but but I also don't want to be the first to try figure it out understand uh with that said your honor I will uh based upon what I've heard and what's been argued I mean I've uh we can argue the various allegations that are made but I understand the court's position at this point and I'll concede my time thank you Mr. Durham I appreciate that um Mr. Bernini um I guess the question for you is um do you really think anything more needs to be said you're muted by the way you're still muted um all right we're back based on everything I've heard your honor always wise for a good lawyer to know when to stop talking there I might so thank you for your time we could see the rest of our time a great lawyer does that thank you um Mr. Bernini um so that's our last case um for today we appreciate um your arguments and we are adjourned